UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BENNY R. A.,[1] | Case No. 8:20-cv-00878-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Benny R. A. ("Plaintiff") filed a Complaint on May 11, 2020, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on March 29, 2021. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

On March 27, 2014, Plaintiff applied for DIB, alleging disability beginning April 29, 2012. Administrative Record ("AR") 155-58. After his application was denied initially (AR 81, 99-105), and on reconsideration (AR 95, 106-07), the first of two administrative hearings was held regarding Plaintiff's claim on April 6, 2012. AR 29-60, 76-77. Plaintiff, represented by counsel, appeared in San Diego, California, and testified before Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). AR 28-68. On September 15, 2016, the ALJ issued a written decision finding Plaintiff was not disabled. AR 10-27.

After the Appeals Council denied Plaintiff's request for review (AR 1-6), Plaintiff appealed to United States District Court for the Central District of California. On September 28, 2018, the undersigned concluded that the ALJ's evaluation of Dr. Lincoln Yee's opinion was legally insufficient. AR 1173-83; Benny R. A. v. Berryhill, 2018 WL 4735714 (C.D. Cal. Sept. 28, 2018). Specifically, the Court found that Dr. Yee's assessed limitations against "repetitive extension" of the right shoulder and "repetitive gripping [and] grasping" were significant work-related limitations, and the ALJ erred by not referencing or incorporating them in the residual functional capacity ("RFC") or in a hypothetical to the VE. AR 1180; Benny R. A., 2018 WL 4735714 at *4. The Court noted the Commissioner's argument that the ALJ did consider the limitations of Dr. Mark A. Mandel against "very repetitive pushing and pulling" and "very repetitive grasping" and that the parties disputed the significance of the difference between "repetitive" and "very repetitive," but the Court found that as a matter of grammar and usage, a limitation against "very repetitive" activities is less restrictive than a limitation against merely "repetitive" activities. AR 1180-81; 2018 WL 4735714 at *4. The Court also

found that "the fact that the terms or phrases are subject to differing interpretations, and may be terms of art used in the state worker's compensation system under which Dr. Yee and Dr. Mandel appeared to be operating in making their respective findings," further supported a finding that the ALJ should have considered and addressed Dr. Yee's assessed limitations, citing, among other cases, Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (finding ALJ's decision was not supported by substantial evidence because the ALJ had not adequately considered definitional differences between the California workers' compensation system and the Social Security Act ["SSA"]). AR 1181; 2018 WL 4735714 at *4. Accordingly, the Court reversed and remanded the matter for further proceedings. AR 1182-83; 2018 WL 4735714 at *5.

On January 23, 2019, the Appeals Council vacated the Commissioner's prior decision, consolidated the case with a duplicate claim for DIB subsequently filed by Plaintiff, and remanded to an ALJ for further proceedings consistent with this Court's order. AR 1187-88. On remand, a different ALJ convened a second hearing on February 12, 2020, in Orange, California. AR 1118-51. Plaintiff did not appear at the hearing, but was represented by counsel, who provided argument and examined the testifying VE. Id.

On March 4, 2020, the ALJ issued a written decision finding Plaintiff was not disabled. AR 1096-1109. The ALJ found Plaintiff last met the insurance status requirements through the date of the decision. AR 1098. The ALJ found that, although Plaintiff engaged in substantial gainful activity at certain times during the relevant period, there were continuous 12-months periods which he did not engage in such activity. AR 1099-1100. The ALJ concluded Plaintiff had the following severe impairments: right lateral medial epicondylitis, cervical degenerative disc disease with history of fusion surgery, lumbar disc protrusion/herniation, right-knee osteoarthritis, and right-shoulder

degenerative changes. AR 1100-01. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 1102), and he had the RFC to perform light work[2] except as follows (AR 1102-06):

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk 6 hours in an 8-hour day, and sit 6 hours in an 8-hour day. He can occasionally walk on uneven terrain. He can frequently push and pull with the upper extremities. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can occasionally reach overhead with the bilateral arms. He can occasionally perform forceful gripping and grasping. He must avoid concentrated exposure to extreme cold. He cannot be exposed to hazards such as dangerous moving machinery or unprotected heights.

The ALJ next found that Plaintiff was unable to perform his past relevant work as a cashier, checker (Dictionary of Occupational Titles ["DOT"] 211-462-014) or retail manager (DOT 185.167-046). AR 1106-07. The ALJ also found that Plaintiff is closely approaching advanced age, has at least a high school education, and can communicate in English. AR 1107.

---

[2] "Light work" is defined as
lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Aide R. v. Saul, 2020 WL 7773896, at *2 n.6 (C.D. Cal. Dec. 30, 2020).

The ALJ then found that, if Plaintiff had the RFC to perform a full range of light work, a Medical-Vocational rule would direct a finding of not disabled. AR 1107. But, as Plaintiff's ability to perform all or substantially all the requirements of light work was impeded by additional limitations, the ALJ consulted the testimony of the VE. AR 1107-08. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including: office helper (DOT 239.567-010), counter attendant (DOT 311.477-014), and mail clerk (DOT 209.687-026). AR 1108. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the SSA, from the alleged onset date through the date of the decision. AR 1108-09.

The ALJ's remand decision became the final decision of the Commissioner because neither Plaintiff filed exceptions nor did the Appeals Council initiate review.[3] Dkt. No. 1 at 2; Jt. Stip. at 3.

## II.
## LEGAL STANDARDS

**A.      Standard of Review**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if

---

[3] When a federal court remands a case for further consideration, the ALJ's new decision becomes the final decision of the Commissioner after remand unless the Appeals Council assumes jurisdiction of the case. 20 C.F.R. §§ 404.983, 404.984(a). A claimant who disagrees with the ALJ's decision may file written exceptions with the Appeals Council within 30 days of the decision. 20 C.F.R. § 404.984(b)(1). If no exceptions are filed and the Appeals Council does not assume jurisdiction within 60 days of the decision, the ALJ's new decision becomes the final decision of the Commissioner after remand. 20 C.F.R. § 404.984(c), (d); see also Lopez-Frausto v. Saul, 2020 WL 6728196, *3 (E.D. Cal. Nov. 16, 2020).

they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B.     The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at

6

1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show he is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show he is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a

"limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.
### DISCUSSION

The parties present three disputed issues (Jt. Stip. at 5), reordered as:

Issue No. 1: Did the ALJ properly consider the findings of Dr. Yee;

Issue No. 2: Did the ALJ properly consider the findings of Dr. Thomas Sabourin; and

Issue No. 3: Did the ALJ rely upon substantial evidence for job numbers.

**A.     Medical Opinion Evidence**

In the first issue, Plaintiff contends that the ALJ did not properly consider the findings of Dr. Yee. Jt. Stip. at 10-12, 15-16. Specifically, Plaintiff contends that the ALJ did not reject Dr. Yee's assessed limitations of repetitive bending, twisting, or turning activities in relation to the cervical spine. Id. at 11, 16. Plaintiff also contends the ALJ was required consider "repetitive" as a term of art in the California workers' compensation context under Desrosiers, 846 F.2d at 576. Jt. Stip. at 11-12.

   1.     Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a

treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

    2.    <u>Analysis</u>

In August 2014, Dr. Yee performed a panel-qualified, complex comprehensive medical-legal evaluation of Plaintiff, and prepared a 24-page report of his findings. AR 804-27. He discussed three injuries related to Plaintiff's condition: (1) in 1989 a concrete block fell on Plaintiff's head and he had a subsequent decompressive laminectomy of his neck; (2) a head-on automobile collision about 10 years later resulted in a discectomy and fusion for left-sided radiculopathy; and (3) in 2011 Plaintiff injured his right elbow, upper back, and right shoulder while attempting to perform a "buddy lift" of a heavy stack of trays with a co-worker. AR 805-06, 808, 812. Dr. Yee provided a detailed summary of Plaintiff's subsequent work and treatment history, which included being placed on disability by an orthopedist in 2012, elbow, neck, and shoulder injections, opiate and other medication, wearing a brace/elbow strap, long-arm and wrist splints, physical and occupational therapy, referrals to spine, spinal surgery, and pain specialists, and an emergency hospital visit for headaches in the temple, jaw, and radiating to the neck, among other treatments. AR 806-08, 812-22. Dr. Yee conducted physical and neurological examinations of Plaintiff and recorded his findings. AR 810-12. Dr. Yee's

"clinical impression" was: (1) chronic cervical strain with right upper extremity radiculitis; (2) probable right-sided C6-7 radiculopathy; (3) status post C5-6 anterior cervical discectomy and fusion ("ACDF"); (4) right elbow subluxing ulnar nerve; (5) lateral epicondylitis, resolving; and (6) right shoulder scapula-thoracic impingement, non-industrial. AR 822. Dr. Yee detailed a treatment plan which included potentially more surgeries. AR 823.

Dr. Yee then assessed the following "disability" limitations and findings: (1) cervical spine: Plaintiff is "unable to perform any repetitive pending, twisting[,] or turning activities[,] and no repetitive heavy lifting"; (2) right shoulder: "repetitive extension activity should be precluded"; (3) right elbow: Plaintiff "should be prophylactically precluded from repetitive gripping, grasping[,] and very heavy lifting[,] and torqueing activity with the right elbow"; (4) right shoulder and right elbow is "considered permanent and stationary unless [Plaintiff] options to undergo the proposed surgery to the right elbow"; and (5) cervical spine: considered permanent and stationary, but it is "unclear as to whether the surgery would be beneficial and would improve his functional ability." AR 823-24. Finally, Dr. Yee made several conclusions related to workers' compensation law pertaining to apportionment and percentage of impairment. AR 824-25.

The ALJ stated that she read and considered Dr. Yee's opinion and noted that he opined Plaintiff "would be unable to perform any repetitive bending, twisting, or turning activities and could not perform repetitive lifting because of his cervical spine." AR 1105. The ALJ also noted that Dr. Yee "believed [Plaintiff] should be precluded from repetitive extension with his right shoulder." Id. The ALJ gave "some" weight to Dr. Yee's opinion because he examined Plaintiff. Id. However, the ALJ concluded that Dr. Yee's restrictions were "excessive given [Plaintiff]'s negative shoulder X-rays on

October 7, 2016 (Exhibit 11F/47)[4].” AR 1105. Additionally, the ALJ found, "given the medical evidence as a whole, the other opinions, and [Plaintiff]'s robust daily activities, the limitations in the above-stated [RFC] fully accommodate [Plaintiff]'s conditions." Id.

Later in the decision, the ALJ noted there were references in the workers' compensation records to the term "totally temporarily disabled" ("TDD") and explained that the criteria in that context was not the same used to determine disability under the SSA. AR 1105. Therefore, the ALJ concluded, the conclusion by a physician that a claimant is TDD "is not relevant or binding with regard to an application under the SSA." Id.

The Court again finds the ALJ's analysis of Dr. Yee's opinion is insufficient, for the following reasons.

The opinion contains terms or phrases subject to differing interpretations, and terms of art used in the workers' compensation system—such as "permanent and stationary," and, of particular relevance here, "repetitive"—that were not explained or translated in the decision. See Desrosiers, 846 F.2d at 576; Khanh Giang v. Berryhill, 2019 WL 631898, *14 (C.D. Cal. Feb. 14, 2019) (noting numerous cases have "held that the ALJ must address and incorporate the meaning of the term 'repetitive' in a Social Security disability opinion"); Barcenas v. Berryhill, 2017 WL 3836040, *2 (C.D. Cal. Aug. 31, 2017) ("To the extent that the ALJ may have rejected . . . opinion because it included Workers' Compensation terms, the ALJ erred in failing to translate [the] opinion about [p]laintiff's limitations in the Workers' Compensation context into the Social Security context."); Echaury v. Astrue, 2013 WL 436007, *4 (C.D. Cal. Feb. 4, 2013) ("'Repetitive' is a term of art in the California Workers' Compensation system" and the ALJ erred by failing to

---

[4] The cited record reflects the X-ray was conducted October 7, 2015. AR 1011.

11

translate it into corresponding social security terminology); Fuentes v. Comm'r Soc. Sec. Admin., 2013 WL 140290, *4 (C.D. Cal. Jan. 7, 2013) (ALJ erred by failing to explain significance of "permanent and stationary" finding for the purposes of the social security disability evaluation). Although the ALJ discussed the term "TDD" and explained why that it was not relevant to the analysis, Dr. Yee did not make a TDD finding,[5] and, most importantly here, "repetitive" was the key restriction for the three assessed limitations to Plaintiff's cervical spine, right shoulder, and right elbow. As argued by Plaintiff, the ALJ discounted only the shoulder limitation with a citation to a single x-ray, and did not specifically reject, or explain the significance of, the other "repetitive" limitations. Jt. Stip. at 11; AR 1105.

In workers' compensation parlance, "a restriction from 'repetitive' motion indicates a 50% loss of pre-injury capacity." See Alvarado v. Comm'r Soc. Sec., 2018 WL 4616344, *5 (C.D. Cal. Sept. 24, 2018) (noting Commissioner did not dispute that definition); Echaury, 2013 WL 436007 at *4. The ALJ included no neck limitation in the RFC. AR 1102. Although she included other functional limitations that might overlap with Dr. Yee's cervical spine limitation, such as pushing and pulling or reaching, the ALJ couched those limitations in the social security terms of "frequently" and "occasionally." Id.  And nowhere did the ALJ equate Dr. Yee's "repetitive" restrictions to either of those social security terms. Based on the record, it cannot be said that the terms mean the same thing. See Macapagal v. Astrue,

---

[5] Indeed, the ALJ's citation in her paragraph defining the workers' compensation terminology of "TDD" and explaining its non-binding nature was to other records (see AR 1105, citing Exhibits 1F [AR 233-670]; 9F/5 [AR 838]; 10F [AR 894-964]), and omitted Dr. Yee's opinion (Exhibit 7F [AR 804-27]). See, e.g., Barcenas, 2017 WL 3836040 at *3 (citation to other exhibits in discussion of workers' compensation records, but not to the exhibit where the opinion at issue was located, is not a rejection of that opinion).

2008 WL 4449580, at *3 (N.D. Cal. Sept. 29, 2008) (restriction from repetitive work equivalent to neither a limitation to frequent nor a limitation occasional work). Indeed, the Ninth Circuit has observed—although not in the workers' compensation context—that "repetitively . . . appears to refer to a <u>qualitative</u> characteristic," i.e., how or what type of motion is required, whereas "frequently . . . seem[s] to describe a <u>quantitative</u> characteristic," i.e., how often one uses his hands in a certain manner. See <u>Gardner v. Astrue</u>, 257 F. App'x 28, 30 n.5 (9th Cir. 2007) (emphasis in original); <u>Sanchez v. Berryhill</u>, 2017 WL 5508515, at *6 (C.D. Cal. Nov. 16, 2017) (noting this apparent distinction in <u>Gardner</u>).

Moreover, again even if there was some overlap in the cervical limitations to the limitations in the RFC, "frequently" appears to conflict with "repetitive," but it is not entirely clear from the case law. <u>Alvarado</u>, 2018 WL 4616344 at *5 (remanding because "the conclusion that Plaintiff could perform job tasks frequently is not necessarily consistent with a finding that Plaintiff was restricted from performing those activities repetitively"); <u>Brooks v. Astrue</u>, 2012 WL 2373628, at *5 (C.D. Cal. June 22, 2012) (remanding because opinion that claimant was precluded from using her right shoulder, elbow, and left arm on a "repetitive" basis was inconsistent with the ALJ's finding that she was capable of performing "frequent" handling, fingering, feeling, and reaching). It is less clear whether "occasionally" conflicts with repetitive. See <u>Freddy E. P. v. Berryhill</u>, 2019 WL 266963, at *7 (C.D. Cal. Jan. 18, 2019) (noting that "[a]t least one VE has testified that in California workers' compensation jargon, a restriction against 'repetitive' activity equates to the ability to perform the activity occasionally" and that "[s]ome courts outside the Ninth Circuit have found no inconsistency in the determination that claimant cannot perform 'repetitive' motion but can perform occupations requiring 'frequent' motion"). However, because the ALJ failed to translate the opinion

13

into the social security context and make that determination, the issue is unreviewable by this Court. See Brown-Hunter, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Alvarado, 2018 WL 4616344 at *5; Brooks, 2012 WL 2373628 at *5.

Finally, although the ALJ alluded to generic reasons for discounting the opinion (e.g., medical evidence "as a whole," "other opinions," and daily activities), it is unclear which reason applied to which limitation, and, without a definitional explanation of "repetitive," why. As a result, the Court finds the ALJ erred in failing to translate Dr. Yee's opinion into the social security context, as contemplated by the Court's opinion and order on remand, and, without such translation, the Court cannot find such error harmless. See Brown-Hunter, 806 F.3d at 492 (if ALJ fails to specify adequate reasoning, reviewing court will be unable to meaningfully review without substituting its conclusion for the ALJ's, or speculating as to grounds for the ALJ's conclusions; in such a situation, "such error will usually not be harmless"); Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

**B.   Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where further proceedings would serve no useful purpose or where the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A

remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

The Court notes that the Commissioner did not address the Desrosiers workers' compensation translation issue in the Joint Stipulation. See Kinley v. Astrue, 2013 WL 494122, at *3 (S.D. Ind. Feb. 8, 2013) ("The Commissioner does not respond to this [aspect of claimant's] argument, and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response."). However, in similar fashion, Plaintiff, despite having the benefit of the Court's prior opinion and remand order flagging the issue, did not appear to raise the issue of workers' compensation translation in exceptions before the Appeals Council. Accordingly, the Appeals Council did not have an opportunity to address this specific challenge in the first instance following remand. Steward v. Astrue, 2012 WL 4210624, at *4 (D. Or. Sept. 19, 2012) (finding claimant waived argument not raised before Appeals Council).

Nonetheless, considering both parties' failures to address the relevant issue in this proceeding or in prior proceedings, and noting that exhaustion is not jurisdictional, because the underlying decision and record are insufficient to determine the harmfulness of the error, the Court reverses and remands the case to the Agency yet again. See Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir. 1993) ("The exhaustion requirement . . . is not jurisdictional, and thus, is waivable by either the Secretary or the courts."). Because it is unclear whether Plaintiff was in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the Agency shall translate Dr. Yee's opinion into the social security context with particular attention to the "repetitive" terminology and the assessed repetitive limitations, obtain competent workers' compensation medical expert testimony or interrogatories if necessary, then assess the repetitive limitations and all other significant findings in Dr. Yee's and any other relevant opinion, reassess Plaintiff's RFC and determine whether Plaintiff's limitations conflict with the RFC, and proceed through the remaining steps of the disability analysis to determine whether Plaintiff can perform other work, if any, that exists in significant numbers.

## IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: April 08, 2021

JOHN D. EARLY
United States Magistrate Judge